## MILLER & WORLEY *v.* FOREE & CO.

*(Circuit Court, D. Kentucky.* 1881.)

1. LETTERS PATENT—PRIOR DISCOVERY AND USE.

Prior discovery and successful use of the patented process is a complete defence to a suit for infringement brought by the patentee.

2. SAME—TOBACCO PLUGS.

The invention of a process for finishing and marking tobacco plugs, claimed by Miller & Worley in reissued letters patent No. 8,060, dated January 29, 1878, was anticipated by Ed. F. Smith.

*Geo. Harding, Stem & Peck,* and *Beattie & Winchester,* for plaintiffs.
*S. S. Boyd,* for defendants.

BAXTER, C. J. Complainants sue for an alleged infringement of reissued letters patent No. 8,060, issued to them on the twenty-ninth of January, 1878.

The invention claimed consists of a process for finishing and marking tobacco plugs with an ineffaceable identifying impression by one and the same pressure, by means of compress plates, with draws in relief, whereby the tobacco takes a permanent set, with the impression in it, and in a finished state; the tobacco having been previously prepared by a forming pressure in the molds. The patent contains two claims: *First,* the described process of marking plug tobacco, which consists in impressing letters or other marks directly into the side of the plug during the process of manufacture, and by the pressure employed in making the plug, substantially as described; *second,* a tobacco plug marked with an impression, substantially as described.

The defendants, among other defences, allege that Miller & Worley, the parties named in the original patent as the first and original discoverers of the patented process, are not the original discoverers thereof, and aver that said process was understood and applied by the several parties named in the answer before its discovery and use by Miller & Worley. The case, as it was then presented, was heard by me more than a year ago, when a decree was entered sustaining the first claim of the patent, adjudging defendants guilty of infringement, granting an injunction, and ordering an account of profits, etc. But before the account was taken I granted a rehearing to enable defendants to put in additional and newly-discovered evidence to sustain this defence of prior discovery and use of the process secured by complainants' patent. Further evidence was accordingly adduced by both parties bearing on this issue, the most important of which is found in the depositions of Ed. F. Smith and Robert E. Lee.

The object of these depositions is to show that the patented process had been discovered, matured, and successfully used by Smith

before it was discovered by the patentees. If the depositions of Smith and Lee, his foreman, are true, the defence of prior discovery and use is well sustained. But are these depositions reliable? The witnesses have been severely attacked and successfully impeached, in so far as evidence assailing the general character of a witness can discredit their testimony. But this successful assault upon the general character of these two witnesses does not necessarily exclude their testimony from consideration. The law recognizes the possibility of a witness of general bad character telling the truth, and therefore permits such witnesses to testify,—their evidence to be received for whatever, under the circumstances of the particular case, the tribunal charged with the duty of passing on and deciding the facts may deem it worth. It therefore becomes our duty to consider and decide how much weight ought to be given to the testimony of these witnesses, as against the *prima facie* case made by the patent itself. The patent is evidence of its own validity, and hence the burden of proof to invalidate it rests upon the defendants. Every reasonable doubt ought to be resolved against them, and if, proceeding on this hypothesis, it shall be found that Smith's alleged discovery, etc., was incomplete, and resting on speculation and experiment only, or that the evidence on this point is evenly balanced, it cannot avail to defeat complainants' patent. Let us now examine the testimony and see how the fact in this regard is.

As preliminary to the main question, it is perhaps proper to remark that the defendants on the former hearing contended that complainants' patent had been anticipated by English and American patents, issued to other parties. But this defence was rejected as untenable. I still adhere to the opinion then expressed. Although said several anticipating inventions had been successfully used in marking soap, tobacco, and other substances, with the names of the manufacturers, or with such other trade-mark or identifying mark as the manufacturers chose to impress on the product of their labors, neither of such inventors had conceived or clearly developed the precise process which constitutes complainants' discovery. But these prior discoveries reflected more or less light upon this general subject, if they did not distinctly suggest the identical idea which contitutes complainants' invention. The surprise is, therefore, not that Smith should have blundered upon the same thought, but that the thing patented had not occurred to some one at an earlier date.

Smith says that he did conceive the idea, and proceeds to detail the different steps taken to develop it. He was a manufacturer in a

small way, at a remote place in Arkansas, of plug tobacco. Both his means and facilities for carrying on his business were exceedingly limited. He used wooden moulds, and finding that the faces of his moulds were such as to leave the tobacco with a rough finish, he made an effort to remedy the matter by plating the moulds with metal plates fastened on by screws; and discovering that, when the moulds thus plated were used, the screw-heads made an impression upon the finished tobacco, he conceived the idea of marking the tobacco with his name, and began at once a course of experiments to mature and develop the thought and apply it to practical use. But he found difficulty in giving a satisfactory finish to the tobacco and making the impression permanent. At this point Lee, his foreman, came to his assistance, and advised him to buy a finisher. Thereupon Smith ordered a finisher from a firm in Louisville, whose name is given, and after further consultation with Lee and one G. W. Davidson, a jeweler, he employed the latter to make him two zinc plates, with the letters of his name raised thereon, which he occasionally used in marking two tobacco plugs out of the 180 plugs in each finishing process, at intervals, from August, 1875, to April, 1876, at which last-named period his factory was seized by the government and his business suspended.

Now if, as has been stated, Smith's evidence is true, the process so discovered and applied by him is a clear anticipation of complainants' discovery. The explanation, and the manner in which it has been told, are well calculated to impress one with confidence in its truth. Besides, he is confirmed in every material particular by Lee.

But complainants have examined quite a number of witnesses, who, in addition to testimony impeaching the general character of both Smith and Lee, testify that they bought and sold tobacco manufactured by Smith during the period mentioned, and that they had no recollection of having seen any plug of tobacco marked with Smith's name. This evidence is, notwithstanding its negative character, entitled to a good deal of weight.

But defendants rejoin, first, by argument and then by evidence. Their argument is that Smith, being a manufacturer in but a very small way, using his plates for marking only at intervals, and then only marking, say, one or two plugs out of 180 in each finishing process, it is not unreasonable to suppose that Smith may have marked tobacco in the manner and by the process described by him, and that none of the witnesses examined by complainants should have noticed any of the marked plugs. And, by way of further rejoinder,

the defendants have adduced other and corroborating evidence that has not been questioned. Davidson, who made the marking plates for Smith, and who is shown to be a reputable man, has been examined by defendants, and on his examination testified that he had, at or about the time alleged, at Smith's instance and request, made such plates for Smith as herein previously described; and his testimony is confirmed by the production of one of said plates, which bears every indication of genuineness, and is identified by Smith, Lee, and Davidson as one of the plates made by the latter and used by Smith in his business. There is, in fact, no ground on which to doubt the truth of this part of the evidence. If, then, said plate was made at the time and for the purpose mentioned, it follows, as the night follows the day, beyond all reasonable doubt, that it was so used.

But this is not all. The conclusions reached and announced in the preceding paragraph are confirmed by the positive testimony of other witnesses. Thomas Y. Huddleston, who was at the time of his examination, and for nearly eight years prior thereto, sheriff of his county, and who, so far as this record discloses, notwithstanding the attempt to impeach his credibility, is a reputable citizen, testifies that he had purchased plug tobacco from Smith about that time with Smith's name impressed upon it; and he is confirmed by M. W. Wright, one of complainants' witnesses, who, on cross-examination, says that Smith showed him two plugs of tobacco so marked, which Smith at the time represented to be his work. This evidence, supplementing, as it does, the testimony of Smith, Lee, and Davidson, makes a clear case of anticipation.

Yet complainants contend that Smith never perfected and reduced his alleged discovery to any practical use; that it was merely experimental and incomplete; and, in support of this theory, they further insist that Smith could not, and did not, impart as fine a finish to his tobacco as was given to the tobacco finished under complainants' process; and that for this and other insuperable difficulties in his way he abandoned the invention in an incompleted condition.

I cannot, however, concur in this view of the facts. Smith discovered the "process." This he seemed thoroughly to understand, and having applied it successfully to one or two plugs, it required no inventive genius to apply it to others. It is not important that he did not do this. He did not have the necessary facilities, nor the means with which to obtain them. Besides, the seizure of his factory by the government, some eight months after his first experiment was

made, constrained him to abandon the prosecution of the idea. But he did not so abandon it until he had fully developed the *process*, and until it was understood by himself, Lee, and Davidson; and this, we think, is enough, under the authority of *Coffin* v. *Ogden*, 18 Wall. 120, to supersede and overthrow complainants' patent.

A decree will be entered dismissing complainants' bill with costs.